[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15800
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2009
THOMAS K. KAHN
CLERK

Agency No. A200-125-832

SHIJIE HUANG,

                                                          Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                          Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 2, 2009)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Shijie Huang, a native and citizen of China, petitions this court for review of

the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's

("IJ") order of removal and denial of asylum and withholding of removal. Huang's claim involves the "other resistance" prong of 8 U.S.C. § 1101(a)(42), which addresses persecution based on opposition to coercive birth control policies. After a thorough review, we conclude that the record does not compel the conclusion that Huang suffered past persecution. Accordingly, we deny the petition for review.

Huang entered the United States on November 8, 2005 without having been admitted or paroled and was charged with removability under 8 U.S.C. § 1227(a)(6)(A)(i). In 2006, Huang applied for asylum and withholding of removal, alleging that he had been persecuted due to his resistance and opposition to China's coercive family planning policies.[1]

At his removal hearing, Huang testified as follows: Huang and his fiancée became engaged in 2005, although they were not permitted to marry under China's policies because Huang was underage. When Huang's fiancée became pregnant, they decided to go into hiding to avoid the twice-monthly government home inspections until the baby was born. In February 2005, Huang and his fiancée moved to Huang's parents' home in the Fujian Province. Despite the move, Huang was concerned about his fiancée's safety and decided that she should stay with

---

[1] Huang also requested relief under the United Nations Convention Against Torture ("CAT"). The IJ denied Huang's claim for CAT relief, and Huang does not challenge this decision on appeal. Accordingly, he has abandoned that claim. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

Huang's aunt. Nevertheless, on May 17, a family planning official and the police came to Huang's parents' home looking for Huang's fiancée. The authorities demanded that Huang disclose his fiancée's location. When he refused, the authorities took Huang to the family planning office, where he was handcuffed, interrogated, and beaten everywhere except his head. Huang was detained for five days, during which he expressed his disagreement with the family planning restrictions. After Huang's parents visited him in detention, Huang's fiancée agreed to turn herself in to authorities, who forced her to undergo an abortion. After Huang paid a fine, he was released on February 22 and he did not experience any other difficulties with authorities. In September 2005, Huang left China and came to the United States. His fiancée remained in China, but Huang did not want to return because he feared he would be jailed and fined due to his illegal departure. He further explained that he had opposed China's policies as a teenager when he participated in anti-policy parades, and continued to fear China's coercive birth control policies, as families were only allowed to have one child and he could be sterilized. He acknowledged, however, that his mother had given birth to two children.

In support of his asylum application, Huang submitted the following documents: (1) the 2007 State Department Country Profile; (2) the 2006 State Department Country Report; (3) a letter from his fiancée; (4) a letter from his

3

mother; (5) a copy of China's family planning policy; (6) Congressional testimony and hearings, including testimony from Dr. Aird, an expert in Chinese family planning policies; and (7) various articles about China's policies.

According to the Country Profile and Country Report, China had strict birth control laws. The extent of adherence to the policy varied within the country. In the Fujian Province, authorities used "remedial measures" to deal with violations. Although the government's policy discouraged forced abortions and sterilizations, there was some evidence these coercive techniques continued.

In her letter on behalf of Huang's application, Huang's fiancée confirmed that she had been forced to undergo an abortion. Although the letter noted Huang's detention, it did not mention the alleged beating. In her letter, Huang's mother wrote that she had been forced to undergo sterilization after she violated the family planning restrictions. She confirmed Huang had been detained, but did not mention the alleged beating, and she indicated that she had been unable to visit Huang in detention.

The IJ denied relief, concluding that Huang did not suffer past persecution on account of his resistance to China's family planning policies under INA § 1101(a)(42). The IJ noted some discrepancies between the testimony and the evidence, but did not make an explicit adverse credibility finding. The IJ found that there was no evidence Huang suffered any harm after his participation as a

4

teenager in the anti-policy parades, and Huang experienced no mistreatment following his release from detention. The IJ further concluded there was no evidence Huang would face future harm if returned to China.

Huang appealed to the BIA, arguing that he established a claim under the "other resistance" prong because he expressed his disagreement with the birth control policies and was beaten as a result. He further asserted that he should have been considered eligible for relief based on his fiancée's forced abortion. Because he established past persecution on these grounds, Huang argued, he was entitled to the presumption of a well-founded fear of future persecution.

The BIA presumed Huang was credible, affirmed the IJ's decision, and rejected Huang's claim that he was entitled to relief based on his fiancée's forced abortion. Considering the "other resistance" claim, the BIA concluded that Huang failed to establish past persecution, as his claim was vague and Huang had suffered no harm after his release from detention. The BIA further found that there was no well-founded fear of future persecution. Because the asylum claim failed, the BIA also denied the claim for withholding of removal. This petition for review followed.

In his petition, Huang argues that the BIA erred because he established eligibility for relief from removal based on his fiancée's forced abortion and his own resistance to China's coercive birth control policies.

5

Where, as here, the BIA affirms the IJ's decision, but issues a separate opinion, we review the BIA's opinion "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). We review legal determinations de novo and factual determinations under the "substantial evidence test." See D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004); Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001). Under this highly deferential test, we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). We review the record evidence in the light most favorable to the agency's decision and may not overturn findings of fact unless the record *compels* it. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005) (emphasis added).

The Attorney General has discretion to grant asylum if an alien can show he is a "refugee." 8 U.S.C. § 1158(b)(1). To meet this burden, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.

If the alien establishes past persecution, he is presumed to have a well-

6

founded fear of future persecution unless the government can rebut the presumption. D-Muhumed, 388 F.3d at 818 (citing 8 C.F.R. § 208.13(b)(1)(i), (ii)). If he cannot show past persecution, then the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. Al Najjar, 257 F.3d at 1289. The subjective component can be proved "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Yang v. United States Att'y Gen., 418 F.3d 1198, 1202 (11th Cir. 2005).

> "Refugee" is defined as
>
> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion.

8 U.S.C. § 1101(a)(42)(A) & (B). Although the statute does not define "persecution" for purposes of qualifying as a "refugee," it provides that:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for *other resistance* to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of

7

political opinion.

8 U.S.C. § 1101(a)(42)(B) (emphasis added). Interpreting this provision, this court has held that "[i]n addition to meeting the nexus requirement based on 'resistance' to the family planning law, an applicant claiming persecution based on an unmarried partner's abortion must demonstrate that he has suffered harm amounting to persecution on account of that resistance." Yang v. U.S. Att'y Gen., 494 F.3d 1311, 1318 (11th Cir. 2007) (quotations omitted), cert. denied, 128 S.Ct. 2466 (2008).

As an initial matter, this court has rejected the argument that an unmarried individual is entitled to relief based on his significant other's forced abortion, and we are bound by prior precedent unless it is overturned by the Supreme Court or this court sitting en banc. Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998) (explaining prior panel rule); Lin, 555 F.3d at 1315 (rejecting persecution claim of unmarried partner); Yang, 494 F.3d at 1317 (same). Huang may still show eligibility for relief, however, if he can establish past persecution, or a well-founded fear of future persecution, based on the "other resistance" clause. Lin, 555 F.3d at 1315; Matter of J-S-, 24 I. & N. Dec. 520 (BIA 2008).

Because the IJ did not make an explicit adverse credibility determination, we accept Huang's testimony as credible. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257 (11th Cir. 2007); see also 8 U.S.C. § 1158(b)(1)(B)(iii). Credible

8

testimony "may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii); D-Muhumed, 388 F .3d at 818-19; see also 8 C.F.R. §§ 208.13(a), 208.16(b); Forgue, 401 F.3d at 1287. "The weaker an applicant's testimony, however, the greater the need for corroborative evidence." Yang, 418 F.3d at 1201.

Here, the IJ and BIA concluded that Huang failed to establish that he suffered past persecution. Huang asserted that he was persecuted when he was detained for five days and beaten.[2] Upon review, we conclude that the record does not compel the conclusion that Huang suffered past persecution.

Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006) (finding no persecution where asylum petitioner was detained by Chinese government for five days but suffered no injuries). Huang's detention and beating do not rise to the level of persecution. See, e.g., Djonda v. U.S. Att'y Gen., 514

---

[2] To the extent Huang challenges his fine as persecution, a single fine for failure to comply with family planning policy does not amount to persecution. See Yang, 418 F.3d at 1203.

9

F.3d 1168, 1174 (11th Cir. 2008) (holding that a "minor beating" and brief detention did not rise to the level of persecution). It does not appear that Huang required medical treatment following the beating, and there is no evidence that he suffered any lasting effects or other mistreatment. Considering the record, we cannot conclude that this incident has the same level of severity found in other cases in which the record has compelled a conclusion that the petitioner was persecuted. See, e.g., De Santamaria v. U.S. Att'y Gen., 525 F.3d 999 (11th Cir. 2008) (involving verbal threats, assault resulting in hospitalization, trauma from torture and fatal shooting of family groundskeeper who refused to reveal petitioner's location, kidnaping and beating with guns resulting in hospitalization); Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211 (11th Cir. 2007) (involving threats, numerous interrogations and beatings by police during a 15-day detention resulting in 2-month hospitalization, and two subsequent physical assaults on street); Mejia v. U.S. Att'y Gen., 498 F.3d 1253 (11th Cir. 2007) (involving written threats and "condolence" letter, assault with a rock and detention at gunpoint, during which petitioner was thrown to the ground and his face was smashed with a rifle butt, breaking his nose and requiring surgery); Ruiz v. Gonzalez, 479 F.3d 762 (11th Cir. 2007) (involving verbal threats, brief detention and physical assault during which another person was shot trying to escape, another brief detention in which petitioner was beaten with weapons and kidnaping during which petitioner's wife

10

was raped, his farm animals were killed and petitioner was forced to march into the jungle, where he was held for 15 days before he escaped). Accordingly, Huang cannot show he suffered past persecution.

Additionally, Huang cannot show that he has a well-founded fear of future persecution. Huang alleged that he would be punished for illegally leaving the country. Such departure does not, however, establish a well-founded fear. Barreto-Claro v. United States Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001) (holding that prosecution for violating Cuba's travel laws was not persecution); In re J-W-S, 24 I. & N. Dec. 185, 194-95 (BIA 2007) (finding that a fine for illegal departure would not amount to persecution). Huang experienced no difficulty with authorities from the time of his release until he fled China. Under such circumstances, Huang's fear of future persecution is not objectively reasonable.

Finally, because Huang failed to establish his eligibility for asylum, his claim for withholding of removal also fails. Zheng, 451 F.3d at 1292; Forgue, 401 F.3d at 1288 n.4.

**PETITION DENIED.**